UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEWIS WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:03CV876 JCH |
| ) | |
| MIKE KEMNA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri State prisoner Lewis Williams' pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 4). The matter is fully briefed and ready for disposition.

On September 15, 1994, a jury in Circuit Court of the City of St. Louis, Missouri, found Petitioner guilty of first degree murder, two counts of first degree assault, and three counts of armed criminal action. (§ 2254 Motion, Doc. No. 4, at 3). The trial court sentenced him to life imprisonment without the possibility of parole or probation for the murder count, life imprisonment for the armed criminal action, and fifteen years imprisonment for each of the remaining counts. (Id.). On April 4, 2000, the Missouri Court of Appeals affirmed Petitioner's conviction. (Id. at 4).

In his § 2254 petition, filed July 3, 2003, Petitioner raises the following eight grounds for relief:

(1) The trial court erred when it asked him, in the presence of the jury, if he wanted to testify;

(2) The trial court erred when it overruled Petitioner's objection and permitted the prosecutor to cross-examine him about Petitioner's involvement in an unrelated shooting;

(3) He received ineffective assistance of counsel when his attorney failed to call Bryant Noble to testify;

(4) The prosecutor engaged in prosecutorial misconduct when it called a witness who provided testimony that contradicted that witnesses' testimony at a different trial;

(5) He received ineffective assistance of counsel when his attorney failed to impeach that witness about his contradictory testimony;

(6) The motion court erred in denying his ineffective assistance of counsel claim;

(7) Actual innocence and newly discovered evidence along with his ineffective assistance of counsel claim violated Petitioner's rights; and

(8) The trial court erred when it denied Petitioner's motion for judgment of acquittal on one count of assault in the first degree because there was legally insufficient evidence that Petitioner caused serious physical injury to the victim.

On August 21, 2003, Respondent filed his Response. (Doc. No. 8). On November 26, 2003, Petitioner filed his Traverse. (Doc. No. 11). The Court will address each ground for relief in turn.

## **DISCUSSION**

A state prisoner may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner is entitled "'to relief on federal habeas corpus only upon proving that [his] detention violates . . . fundamental liberties . . . safeguarded against state action by the Federal Constitution.'" Wessling v. Bennett, 410 F.2d 205, 209 (8th Cir. 1969) (quoting Townsend v. Sain, 372 U.S. 293, 312 (1963)). "'[I]t is not the province of a federal habeas court to re-examine state-court determinations [of] state-law questions.'" Gee v. Groose, 110 F.3d 1346, 1349 (8th Cir. 1997) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Rather, a federal court is limited "'to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" Id.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132, 110 Stat. 1214, made numerous changes to Title 28, Chapter 153 of the United States Code, 28 U.S.C.

§§ 2241-2255, the chapter governing federal habeas petitions. Specifically, in Section 104 of the AEDPA, Congress added new subsection (d) to 28 U.S.C. § 2254. That subsection provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), a petitioner may prevail if the state court's decision is opposite to that reached by the United States Supreme Court on a question of law or if a state court decides a case differently than the United States Supreme Court despite confronting indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000)(citing Williams v. Taylor, 529 U.S. 362 (2000)); see also Ramdass v. Angelone, 530 U.S. 156 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a writ may issue only if the state court identifies that correct governing legal principle from the United State Supreme Court's decisions but unreasonably applies the principle to the facts of the petitioner's case. See Williams, 529 U.S. at 412. Under this clause, a federal habeas court should ask "whether the state court's application of clearly established federal law [as determined by the United States Supreme Court] was objectively unreasonable." Id. at 1521. It is not enough for the federal habeas court to conclude in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 1522.

**Exhaustion**

A petitioner must exhaust his state law remedies before the federal court can address the merits of his claims in a habeas petition. 28 U.S.C. §2254(b). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Id. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.), cert. denied, 515 U.S. 1163 (1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Every habeas ground advanced by the petitioner must survive this exhaustion analysis, or the petition must be dismissed. Rose v. Lundy, 455 U.S. 509 (1982).

In **Ground 3**, Petitioner asserts that he received ineffective assistance of counsel when his attorney failed to call Bryant Noble to testify. In **Ground 4**, Petitioner asserts that the prosecutor engaged in prosecutorial misconduct when it called a witness who provided testimony that contradicted that witnesses' testimony at a different trial. And in **Ground 7**, Petitioner argues that newly discovered evidence along with his ineffective assistance of counsel claims violated his rights. Petitioner failed to raise these claim in his Rule 29.15 motion for post-conviction relief. A claim must be presented at each step of the judicial process in state court to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (citing Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). Because Petitioner has failed properly to raise these claims in state court proceedings,

the claims are defaulted and he is procedurally barred from pursuing them here. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995). This Court therefore cannot reach the merits of the claims absent a showing of cause and prejudice, or a demonstration "that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Petitioner has neither asserted nor shown cause for or prejudice as a result of his failure to raise these claims before the post-conviction motion court. Although he does not specifically make the argument, Petitioner could intend that **Ground 7**, which asserts that newly discovered evidence proves his actual innocence, fulfills the "fundamental miscarriage of justice" exception to the required showing of cause and prejudice. Schlup v. Delo, 513 U.S. 298 (1995); Washington v. Delo, 51 F.3d 756, 761 (8th Cir.). The "miscarriage of justice" exception applies only where the petitioner is "actually innocent" of the crime for which he was convicted. Schlup, 513 U.S. at 321. A petitioner relying on a claim of actual innocence to remove the procedural bar on defaulted claims must (1) support his allegations of constitutional error with new reliable evidence and (2) establish that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997) (en banc).

In **Ground 7**, in support of his claim of innocence, Petitioner alleges that Bryant Noble has since admitted to the crimes for which Petitioner was convicted. Petitioner includes an affidavit from Noble. Petitioner uses the alleged admission to support his claim of ineffective assistance of counsel. He asserts that he received ineffective assistance of counsel because his attorney failed to call Bryant Noble to testify at Petitioner's trial. This argument fails for three reasons.

First, the underlying ineffective assistance of counsel claim has no merit. Petitioner's trial counsel subpoenaed Noble to testify at Petitioner's trial, but Noble asserted his Fifth Amendment

rights. (Respondent's Exh. B at 78). Trial counsel did not act unreasonably when failing to call to the stand a witness who had stated that he intended to invoke his Fifth Amendment rights.

Second, Noble's affidavit is not newly discovered evidence. Noble chose not to testify at Petitioner's trial. When a person who has declined to testify at trial comes forward later with testimony exculpating the defendant, the evidence is not newly discovered. Meadows v. Delo, 99 F.3d 280, 282 (8th Cir. 1996). This is because the test for newly discovered evidence is "whether the evidence could have been discovered earlier in the exercise of due diligence." Cornell v. Nix, 976 F.2d 376, 380 (8th Cir.1992). Here, Noble's testimony could have been discovered.

Third, even if Noble's affidavit is considered, in light of the numerous eyewitnesses testifying against Petitioner at his trial, the Court cannot say that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Weeks, 119 F.3d at 1351.

Grounds 3, 4, and 7 of the instant petition are therefore procedurally defaulted and will be denied.

**Claims Addressed on the Merits**

1. Ground 1

In Ground 1 for relief, Petitioner alleges that the trial court judge erred when she asked him in the presence of the jury if he wanted to testify. He asserts that this was "manifest injustice because her questioning – and her subsequent statement for the record that Mr. Williams had refused to testify – constituted a challenge to Mr. Williams to testify and encouraged the jury to draw an adverse inference from his initial refusal to take the stand in his own defense." (Points Relied On for § 2254 Motion, Doc. No. 4, at 1).

Petitioner raised this claim on direct appeal of his conviction, and the Missouri Court of Appeals denied the claim as follows:

> Williams argues the questioning encouraged the jury to draw an adverse inference from his initial refusal to testify in his own defense and constituted a challenge to Williams to testify. Specifically, he complains of the following exchange:
>
> WILLIAMS: I need to address the Court.
> COURT: Just a minute, Mr. Williams. Do you care to testify at this time?
> WILLIAMS: Yes, I would.
> COURT: Would you please take the witness stand, please?
> WILLIAMS: I would leave the room in your contempt. I wish to--I would leave the room.
> COURT: Take her out. Take her out. Take her out. All folks please leave. Do you wish to testify?
> WILLIAMS: I'm not asking to testify. I don't mind but I do not have a lawyer.
> COURT: If you wish to testify, come up and testify. If you wish to testify, come up and testify. Let the record show that the witness has remained silent and does not wish to testify and we'll proceed. Ms. Johnson, call the next witness.
> MS. JOHNSON [defense counsel]: At this time, the defense rests.
> COURT: If you have another witness you want to call besides–
> WILLIAMS: Patrick Brown.
> COURT: If you wish to testify, you may get up and testify.
> WILLIAMS: Where's the witness, Patrick Brown?
> COURT: This is your opportunity to testify, if you wish to testify.
> WILLIAMS: Yes, I do want Patrick Brown.
> COURT: All right, get up here and testify if you want to testify now.
> WILLIAMS: Would Patrick Brown–
> COURT: Excuse me. If you wish to testify, step forward and testify now, Mr. Williams.
> WILLIAMS: I don't have a lawyer.
> COURT: All right. Then the defense rests. You may approach the bench.
>
> Williams concedes that he did not object to this exchange at trial. As such, this claim is not properly preserved for appeal, and the only review here can be for plain error. Plain error review, however, should be used sparingly and should not be used to justify the review of every point that has not been properly been preserved. State v. Fairow, 991 S.W.2d 712, 715 (Mo. App. E.D. 1999). A claim should be reviewed for plain error only where it facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. Id. If the court exercises its discretion and reviews for plain error, the appellant bears the burden of demonstrating not only that the trial court erred but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result

if the error is left uncorrected. State v. Hornbuckle, 769 S.W.2d 89, 93 (Mo. banc 1989). "Relief under plain error, therefore, requires that appellant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." Id.

Williams correctly notes that direct references to a defendant's right to testify or failure to do so by a prosecutor or trial court are generally prohibited. State v. Futo, 990 S.W.2d 7, 14 (Mo. App. E.D. 1999). This is because a criminal defendant has the right not to testify. Id.

Williams contends the trial court's questioning constituted an attempt to bring his reluctance to testify before the jury and thus caused the jury to draw an adverse inference therefrom. Williams specifically argues the following exchange, which occurred outside of the hearing of the jury, rendered the trial court aware of his reluctance to testify:

> [Excerpt from transcript that shows that Williams did not want to testify until after the testimony of Patrick Brown, a prosecution witness who was difficult to find or contact.]

There is no merit to this claim. Although this exchange may have made the trial court aware that Williams would not be testifying until after Patrick Brown did so, there is no evidence that such knowledge rendered the trial court's later questioning a deliberate attempt to bring his reluctance to testify before the jury. The trial court simply asked Williams if he wished to testify only in response to his outburst. Williams therefore has failed to point to anything in the record which establishes that he was prejudiced by the trial court's comments.

Moreover, this court has recently held that prejudice and reversible error cannot automatically be presumed whenever a defendant's right to testify or failure to do so is made. Futo, 990 S.W.2d at 16. This is because the "record may present a state of facts and circumstances permitting the court to say that an allusion to the failure of defendant ... to testify was not prejudicial error." Id. ... Such a state of facts and circumstances exist where the evidence of guilt is so strong it demonstrates beyond a reasonable doubt that the reference to the defendant's right to testify did not contribute to the defendant's conviction. Id.

Here, the State presented the testimony of three eyewitnesses to the shooting. Each of these witnesses identified Williams as one of the people who participated in the drive-by shooting. The State presented the testimony of three Housing Authority officers who pursued the van immediately after the shooting and identified Williams as one of the men who jumped out of the van, fired shots in their direction, and fled the scene. The State further presented the testimony of a witness who overheard Williams admit to committing a drive-by shooting at Bluemeyer Housing Projects in which an eleven-year-old boy was shot. This evidence demonstrated that Williams was guilty of the crimes for which he was charged.

Williams further contends that the trial court's comments had the effect of coercing him to testify. Williams cites in support State v. Croka, 646 S.W.2d 389 (Mo. App. W.D. 1983). In Croka, the court held that the prosecuting attorney's comment during voir dire that he anticipated that the defendant would testify coerced the defendant into testifying because it challenged the jury to observe whether the defendant took the stand. Id. at 390.

>    Croka has no bearing on the instant case. In Croka, the prosecuting attorney gratuitously mentioned the defendant's right to testify. Here, the trial court's remarks were in direct response to Williams' outburst. Although the aforementioned conversation between Williams and the trial court took place in front of the jury, it immediately followed a conversation among the attorneys, the trial court, and Williams which occurred outside of the jury's hearing. This conversation featured an acrimonious exchange between the trial court and Williams wherein Williams claimed that he did not have an attorney and the trial court admonished him both to follow his attorney's advice and be seated. The dialogue of which Williams complains was therefore an extension of a conversation which occurred outside of the jury's presence. Thus the trial court's comments are distinguishable from the comments which necessitated a reversal in Croka in the sense that they were provoked.
> 
>    Furthermore, the latter conversation cited above demonstrates that Williams wanted to testify, but not until after Patrick Brown had done so. This is indicated by his affirmative response the first time the trial court asked him if he wanted to testify. Rather than demonstrating that he was forced to testify against his wishes, the record reveals that Williams got what he wanted–the opportunity to testify after Patrick Brown had been called.
> 
>    ...
> 
>    Because Williams has failed to demonstrate that the trial court's comments contributed to his convictions, he has failed to demonstrate that he suffered manifest injustice as a result of these comments.

(Memorandum and Order, Respondent's Exh. F, at 3-8).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Upon review, this Court finds that the opinion of the Missouri Court of Appeals did not result in a decision contrary to clearly established federal law. Further, the Court's review of the record demonstrates that the Missouri Court of Appeals' decision was not based on an

unreasonable determination of the facts in light of the evidence presented. Petitioner's first claim for relief will therefore be denied.

2. <u>Ground 2</u>

In Ground 2 for relief, Petitioner alleges that the trial court erred when it overruled Petitioner's objection and permitted the prosecutor to examine him about his involvement in another shooting. Petitioner also raised this claim on direct appeal[1] of his conviction, and the Missouri Court of Appeals denied the claim as follows:

> Williams argues [that the prior shooting he was questioned about] was evidence of other crimes that was not logically or legally relevant to demonstrate his guilt of the crimes with which he was charged. Williams further argues this evidence was introduced solely to show that he had a violent disposition and a propensity to commit such crimes.
> ...
> Here, the State questioned Williams about his involvement in a prior shooting in order to show his motive for committing the shooting at Bluemeyer Housing Project. The evidence presented at trial indicated that there had been several shootings in the neighborhood of the housing project on March 28, 1993. The evidence also indicated these shootings were gang-related and that Williams was involved in some of them. This evidence was relevant to show that Williams' mother's house was shot up in retaliation for an earlier shooting. Although the evidence at trial did not establish that anyone involved in the prior shootings had been a target in the shooting for which Williams is charged here, it is reasonable to infer that Williams committed the drive-by shooting to retaliate for the shooting at his mother's house. Thus the evidence was relevant to show Williams' motive for committing the shooting.
> Moreover, Williams has failed to demonstrate that the prejudicial effect of this evidence outweighed its probative value. As discussed in point one, the evidence of guilt here was overwhelming. Given all of this evidence, it is unlikely that the jury was persuaded to convict Williams based on the references made to some other shooting in Williams' cross-examination.

(Memorandum and Order, Respondent's Exh. F, at 9-10).

---

[1] As with Ground 1, Williams did not preserve this issue for appeal, so the Missouri Court of Appeals reviewed for plain error. Thus, this Court also reviews for plain error. <u>Hornbuckle v. Groose</u>, 106 F.3d 253, 257 (8th Cir. 1997).

- 10 -

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Upon review, this Court finds that the opinion of the Missouri Court of Appeals did not result in a decision contrary to clearly established federal law. Further, the Court's review of the record demonstrates that the Missouri Court of Appeals' decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's second claim for relief will therefore be denied.

3.  Grounds 5 and 6

In Ground 5, Petitioner alleges that his trial counsel was ineffective for failing to impeach rebuttal witness Patrick Brown with Brown's prior testimony at another trial. In Ground 6, Petitioner alleges that the 29.15 Motion Court erred in finding that his trial counsel was not ineffective. As these claims are essentially the same, the Court will address them together.

As is evident in Ground 6, Petitioner raised the claim of ineffective assistance of counsel before the 29.15 motion court, which held as follows:

CONCLUSIONS OF LAW

> 4. Claim 8(d) is that movant's trial counsel was ineffective for failing to impeach Mr. Brown with his prior inconsistent testimony. Movant suggests defense counsel was deficient in her cross-examination of this witness. However, it was movant, not defense counsel who wanted Mr. Brown to testify, and Mr. Brown testified for the State because he was available at movant's insistence. The record further reflects that the means of cross-examining Mr. Brown was not available and that this was known to movant as well as defense counsel before the witness took the stand to testify for the State. The Court finds, after reviewing the entire record as well as the testimony of [defense counsel] Ms. Johnson at the hearing in this cause that defense counsel was not deficient in her handling of the situation involving Mr. Brown.

(Findings of Fact, Conclusions of Law and Order, Respondent's Exh. H, at 101).

Petitioner advanced the claim before the Missouri Court of Appeals, which held as follows:

> At the evidentiary hearing, Terri Johnson ("Johnson"), movant's trial counsel, testified that she did not have the opportunity to obtain a transcript of the trial of Black, nor did she attend the trial itself. Additionally, Johnson's investigator could not attend the trial. Johnson stated that because of Brown's earlier statement to the police, which was consistent with his testimony at movant's trial, she may not have used an inconsistent statement from Black's trial to impeach Brown. In its findings of fact, conclusions of law, and order, the motion court, after evidentiary hearing, determined that "defense counsel was not deficient in her handling of the situation involving Mr. Brown."
> ...
> In order to establish that his counsel was ineffective, movant must show that counsel's performance failed to conform to the degree of skill, care and diligence a reasonably prudent attorney and that such failure resulted in prejudice to movant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, when the performance of counsel is evaluated under the Strickland test, counsel's actions will not constitute ineffective assistance when they can be considered sound trial strategy. State v. Hall, 982 S.W.2d 675, 680 (Mo. banc 1998). "A defense attorney may decide not to impeach a witness as a matter of trial strategy." White v. State, 939 S.W.2d 887, 897 (Mo. banc 1997).
> We do not need to determine whether counsel's actions constituted ineffective assistance of counsel, because we do not believe movant was prejudiced by counsel's failure to impeach Brown with his prior inconsistent statement. Even if counsel can be found to have performed ineffectively, the second prong of the Strickland test requires us to consider whether movant was prejudiced by counsel's actions. State v. Hall, 982 S.W.2d at 680 (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). In order to prove prejudice, movant must show a reasonable probability that but for the errors of counsel, the outcome of the proceeding would have been different. Id.
> Here, we do not believe that had movant's trial counsel impeached Brown with his prior inconsistent statement, the outcome of the trial would have differed. In

its case in chief, the state presented several witnesses who identified movant as being present at the scene with a gun and witnesses who saw movant shooting the gun as well. The state called four officers of the St. Louis Housing Authority and one civilian as eye-witnesses who placed movant at the scene of the incident. Three of the witnesses testified that they saw movant shooting a gun from a van, and two of the witnesses saw movant holding the gun at the scene. Brown was only called as a rebuttal witness after movant himself testified. We do not believe that impeachment of Brown would have resulted in a different outcome to movant's trial based upon the numerous eye-witnesses to the incident placing movant placing movant at the scene with a gun and firing shots. Point denied.

(Memorandum and Order, Respondent's Exh. K, at 5-6).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Upon review, the Court finds the decision of the Missouri state court was not contrary to clearly established federal law. See Williams v. Taylor, 529 U.S. at 390-391, quoting Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (In order to demonstrate ineffective assistance of counsel, Petitioner must show (1) his counsel's performance was deficient, in that his representation fell below an objective standard of reasonableness; and (2) that such deficient performance prejudiced Petitioner, in that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different). Further, the Court's review

of the record does not demonstrate that the Missouri court's decision was based on an unreasonable determination of facts in light of the evidence presented.

With respect to trial counsel's failure to impeach Patrick Brown with his prior inconsistent testimony, both state courts to consider the issue held that Petitioner was not entitled to relief on this ground. After an evidentiary hearing, the motion court found that trial counsel was not deficient. Further, the Missouri Court of Appeals held that, even if trial counsel were deficient, Petitioner failed to establish the second prong of Strickland, because of other overwhelming evidence of guilt,[2] Petitioner was not prejudiced by any deficiency on the part of trial counsel. The state courts' rulings were not an unreasonable determination of the facts in light of the evidence presented, and so Petitioner's claim of ineffective assistance of trial counsel must fail. Petitioner's fifth and sixth claims for relief will therefore be denied.

3. Ground 8

In Ground 8, Petitioner asserts that there was insufficient evidence to convict petitioner of assault because the State failed to prove that the victim suffered serious physical injury. Petitioner further asserts that the eleven-year old victim "testified that the bullet did not impair the function of his leg in any fashion and there was no medical evidence to support a finding that he suffered an injury

---

[2] Petitioner relies on Smith v. Groose, 205 F.3d 1045 (8th Cir. 2000). In Smith, the Eighth Circuit granted habeas relief to a petitioner because the prosecution advanced factually contradictory versions of events at the trials of both petitioner and another person, leading to both of their convictions for the same crimes. Smith is distinguishable. In Smith, the state had no evidence other than the contradictory testimony to show that the petitioner had committed the crime, "absent the State's actions, the outcome of the trial would have been very different." Smith, 205 F.3d at 1052. Further, the Eighth Circuit pointed out that situations such as the one in Smith will rarely occur: "To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime." Id. Here, the State had numerous other eyewitnesses to the shooting. Petitioner could still have been convicted absent Brown's testimony.

that created 'a substantial risk of death or that caused a serious disfigurement or protracted loss or impairment of the function of any part of his body.'" (Points Relied On for § 2254 Motion, Doc. No. 4, at 38). Petitioner raised this before the Missouri Court of Appeals on direct appeal:

> To sustain a conviction for assault in the first degree, the state is required to show that a defendant attempted to kill or knowingly caused or attempted to cause serious physical injury to another person. Section 656.050.1. If the victim actually sustains a serious physical injury, assault in the first degree is a class A felony. Section 656.050.2. If the victim does not sustain a serious physical injury, assault in the first degree is a class B felony. <u>Id.</u> Williams was charged with the assault in the first degree of Russell as a class A felony.
> Williams correctly notes that under the class A charge the State was required to prove that he actually caused serious physical injury to Russell. Williams also correctly notes that the evidence here was insufficient to sustain a conviction based on the class A charge. However, that does not end the discussion.
> The jury instruction as to the assault in the first degree charge pertaining to Walter Russell provided, in pertinent part, as follows:
> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>> First, that on or about March 28, 1993, in the City of St. Louis, State of Missouri, the defendant or another person attempted to kill or cause serious physical injury to Walter Russell by shooting him, then you are instructed that the offense of assault in the first degree has occurred.
>
> Although the information charged Williams with a class A felony of assault in the first degree, the instruction clearly submitted this charge as a class B felony. As such, there was a variance between the information and the instruction. Thus, the issue for this court is whether this variance is fatal.
> ...
> Here, Williams was charged with assault in the first degree based on the shooting of Walter Russell. The jury instruction submitted the offense of assault in the first degree based on the shooting of Walter Russell.
> The information notified Williams that he would face a charge of shooting Walter Russell. The jury instruction also submitted an offense based on the shooting of Walter Russell. Thus, the instruction did not affect whether Williams received adequate notice of the charge against him. And because Williams denied having any involvement in the shooting, it is difficult to see how this defense would have charged based on whether he was charged with actually causing serious physical injury to Russell or merely attempting to do so. Because the variance between the charge and the instruction here was neither material nor prejudicial, the trial court did not err in submitting the instruction on the class B felony of assault in the first degree to the jury.
> The evidence here was sufficient to sustain a conviction based on such instruction. The evidence presented at trial showed that Williams fired several shots

into a crowd of people, one of which struck Walter Russell in the leg. This was sufficient evidence from which a reasonable juror could conclude that Williams committed a class B felony of assault in the first degree by attempting to kill or cause serious physical injury to Walter Russell. Therefore, although the State concedes that there was insufficient evidence to sustain Williams' conviction as a class A felony, there was sufficient evidence to sustain his conviction as a class B felony.

(Memorandum and Order, Respondent's Exh. F, at 11-14).

The court went on to note that, although the judgment entered by the trial court indicates that Williams was convicted of a class A felony, the sentence of fifteen years imprisonment falls within the range of the class B offense. The court then remanded with instructions for the trial court to enter an order, *nunc pro tunc*, reflecting the fact that Williams' conviction was for a class B felony. (Id. at 14).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Upon review, this Court finds that the opinion of the Missouri Court of Appeals did not result in a decision contrary to clearly established federal law. Rather, it reveals that the judgment contained a mere clerical error, which resulted in no difference of sentence to Petitioner. Further, the Court's review of the record demonstrates that the Missouri Court of Appeals' decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's eighth claim for relief will therefore be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 4) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 119 S. Ct. 89 (1998).

Dated this 10th day of July, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE